IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE BANK OF NEW YORK, not individually, but as successor trustee, | ) ) ) |
| Appellant, | ) ) ) |
| v. | ) Case No. 04 C 2838 |
| UNITED AIR LINES, INC., | ) ) Honorable John W. Darrah |
| Appellee. | ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of the judgment of the bankruptcy court of March 30, 2004, by the Appellant, The Bank of New York, not individually, but as successor trustee ("the Bank of New York"). The bankruptcy court granted summary judgment, ruling *inter alia*, that purported leases held by United were in fact financing agreements for purposes of applying the bankruptcy code. For the reasons that follow, the decision of the bankruptcy court is affirmed.

## BACKGROUND

The City of New York ("New York City") owns the portion of JFK Airport that United currently occupies. New York City leased those premises to the Port Authority of New York and New Jersey ("the Port Authority"). This lease granted the Port Authority the right to improve, develop, operate, and maintain JFK Airport. In 1995, the Port Authority and United entered into a "Site Lease" whereby United leased a portion of the real property located at JFK Airport, along with certain buildings, structures, improvements, and related facilities. The maximum term of this lease runs until 2024, and United is obligated to pay rent to the Port Authority.

In January 1997, the New York City Industrial Development Agency ("the Development Agency") issued special facility revenue bonds to assist United in developing certain facilities at JFK Airport. United applied the proceeds from the sales of these bonds to demolish an existing facility on the airport property United leased and to construct new facilities. The bonds were issued pursuant to an indenture between the Development Agency and a bank. The Bank of New York later succeeded the original bank's interest in the bonds and corresponding agreements. The Bank of New York currently acts as the successor trustee to the bonds.

The 1997 JFK Airport transaction was comprised of multiple documents and agreements. Three agreements include: (1) the Site Sublease, (2) the Facilities Sublease, and (3) the Indenture of Mortgage and Deed of Trust ("the Indenture").

On January 1, 1997, pursuant to the Site Sublease, United subleased a portion of the premises to the Development Agency for the nominal amount of $10.00. The maximum term of the Site Sublease runs until October 1, 2032; but it may terminate early if the Facilities Sublease or United's lease with the Port Authority is terminated. The Site Sublease is to be governed by New York law.

The Development Agency then sub-subleased the premises, along with certain new facilities and equipment to be constructed and acquired, back to United by execution of a Facilities Sublease. The term of the Facilities Sublease is identical to that of the Site Sublease. The Facilities Sublease's lease payment is the amount necessary to make payments required under the Indenture. The Facilities Sublease also provides default provisions and remedies, including the right of the Development Agency to accelerate the lease payments and terminate United's interests in the subleased property if United fails to make the required payments, but not

including a right to take possession of the leased facilities and release them. United is obligated to pay the Development Agency regardless of whether United's lease with the Port Authority was terminated or expired. No reduction in lease payments are given if a portion of the property is damaged. The Facilities Sublease is governed by New York law.

The Indenture provides for the issuance of tax-exempt bonds by the Development Agency, for the JFK Airport trustee to receive the proceeds of the sale of bonds for the purposes of funding construction of defined improvements benefitting United, and for the JFK Airport trustee to receive the rental payments from United under the Facilities Sublease for the purpose of paying the debt service on the bonds and ultimately redeeming them. The Indenture indicates that the bonds are "limited obligations" of the Development Agency, payable only from the revenue received from United and earnings on this revenue.

The Port Authority then gave its consent to the JFK transaction, as it was required to do so before United could assign its interest. The consent provided, in pertinent part, that the "Subleases and financing transaction of which the Subleases are a part . . . are expressly and in all respects subject and subordinate to . . . all terms" of United's lease with the Port Authority.

On December 9, 2002, United filed a voluntary petition under Chapter 11 of Title 11, United States Code. On March 21, 2003, United filed an Adversary Complaint seeking a declaratory judgment that certain of its payment obligations related to airport improvements were not obligations arising under "leases" pursuant to Section 365 of the Bankruptcy Code. Subsequently, all parties moved for summary judgment on the issue of whether the "leases" were true leases, as opposed to financing instruments.

On March 30, 2004, the bankruptcy court granted United's motion for summary judgment. Applying what is commonly referred to as the economic realities test, instead of New York state law, the bankruptcy court held that the Site Sublease and the Facilities Sublease between United and the Development Agency were not true leases for the purposes of § 365 of the Bankruptcy Code.

The Bank of New York appeals the bankruptcy court's judgment to this Court, raising the following issues for review: (1) whether the bankruptcy court erred in granting United's motion for summary judgment and denying the Appellants' motions for summary judgment in determining that the Facilities Sublease was not a true lease under Section 365; and (2) whether the bankruptcy court erred in its application of economic realities test.

## LEGAL STANDARD

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003) (*Hoseman*). All of the facts and the inferences therefrom are viewed in a light most favorable to the nonmoving party. *Hoseman*, 322 F.3d at 473. Similarly, a bankruptcy court's interpretation of statute is a question of law reviewed *de novo*. *See Meyer v. Rigolon*, 30 F.3d 1375, 1378 (7th Cir. 1994). The Court reviews the bankruptcy court's factual findings for clear error. *Hoseman*, 322 F.3d at 473.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*,

203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## **DISCUSSION**

The Bank of New York contends that the bankruptcy court incorrectly held that the Facilities Lease was not a true lease in determining the inapplicability of § 365.

Section 365(a) provides the trustee, or debtor-in-possession in Chapter 11 cases, the power to assume or reject unexpired leases. 11 U.S.C. § 365(a). Certain requirements are imposed when the trustee wishes to assume an unexpired lease under which there has been a default. The trustee must cure the default, compensate any parties that have suffered pecuniary loss from the default, and provide adequate assurance of future performance under the lease. 11 U.S.C. § 365(b). Leases of nonresidential real property are deemed rejected unless assumed within sixty days after an order for relief unless the court, for cause, grants additional time during that sixty-day period. 11 U.S.C. § 365(d).

In order for Section 365 to apply, the lease between the parties must be a "true" or "bona fide" lease. *See In re Moreggia & Sons, Inc.*, 852 F.2d 1179, 1182 (9th Cir. 1988) (*Moreggia*); *In re Powers*, 983 F.2d 88, 89 (7th Cir. 1993) (deciding whether rental agreements were true leases) (*Powers*); *In re Lunan Family Restaurants*, 194 B.R. 429, 450 (N.D. Ill. 1996); *In re Hotel Syracuse, Inc.*, 155 B.R. 824, 838 (N.D.N.Y. 1993) (*Hotel Syracuse*).

The bankruptcy court applied the economic realities substance test in determining that the Facilities Sublease was not a true or bona fide lease. In a different appeal to this Court addressing this same issue, this Court found that the bankruptcy court erred in applying the

economic realities test in determining whether a lease, under facts similar to the instant case, was a true or bona fide lease. *See In re UAL*, 2004 WL 2609196 (04 C 2836 & 04 C 2837) (Nov. 18, 2004); *see also Powers*, 983 F.2d at 90; *In re Pillowtex, Inc.*, 349 F.3d 711, 716 (3rd Cir. 2003) (*Pillowtex*); *In re Sankey*, 307 B.R. 674, 678 (D. Alaska 2004); *In re Pittsburgh Sports Assoc. Holding Co.*, 239 B.R. 75, 83 (W.D. Pa. 1999) (*Pittsburgh Sports*); *In re Fox*, 229 B.R. 160, 164 (N.D. Ohio 1998); *In re DWE Screw Prod., Inc.*, 157 B.R. 326, 330 (N.D. Ohio 1993) (*DWE*) (collectively applying state law in determining whether a lease is a true lease for purposes of Section 365). In *In re UAL*, this Court held that, pursuant to applicable choice of law considerations, the bankruptcy court erroneously applied the economic realities test instead of the applicable state law in determining whether the lease was a true or bona fide lease. *See In re UAL*, 2004 WL 2609196 at * 5. Accordingly, the bankruptcy court in the instant case erred when it applied the economic realities test in determining whether the Facilities Sublease was a true lease.

The Bank of New York contends that New York law should apply, and United contends that either New York or Illinois law should apply. Here, the agreements were executed in New York and involve New York property, interests, and some New York parties. The agreements themselves state that New York law will govern. Therefore, New York law will control.

The bankruptcy court's error was thus harmless because, under New York state law, the "test for what constitutes a lease is the manifest intent of the parties, gleaned from a consideration of the entire contents of the instrument involved, that exclusive control and possession of specified space for a specific term have been granted, subject to reserved rights."

*Loren v. Marry*, 195 A.D.2d 776, 777 (N.Y. App. Div. 1993). The labels the parties place on the transaction and the form of the agreement are not controlling. *Hotel Syracuse*, 155 B.R. at 838; *All Good Leasing Corp. v. Bimco Indus., Inc.*, 143 A.D.2d 788, 788-89 (N.Y. App. Div. 1988). If the parties intended to impose obligations and confer rights that significantly differ from those arising from the ordinary landlord-tenant relationship, the agreement is not a true lease. *Hotel Syracuse*, 155 B.R. at 838. The economic substance of the transaction controls to determine whether the agreement was a true lease. *Hotel Syracuse*, 155 B.R. at 838; *Wheatle v. Citibank, N.A.*, 188 A.D.2d 266, 267-68 (N.Y. App. Div. 1992).[1]

Factors considered in this analysis include whether: (1) the lessee assumed many of the obligations normally associated with outright ownership, (2) the lessor retained an economically significant interest in the property, (3) the purchase price paid by the lessor was related to the fair market value of the land or calculated as the amount necessary to finance the transaction, (4) the lease payments were calculated to compensate the lessor for the use of the land or structured for a return on an investment, and (5) the property was specifically purchased by the lessor for the lessee's use. *See Hotel Syracuse*, 155 B.R. at 838.

The application of these factors to the facts demonstrates that the Facilities Sublease was not a true lease. The Facilities Sublease requires United to pay the taxes, maintenance, and insurance – generally referred to as a triple net lease. While the payment of taxes, maintenance, and insurance are typically viewed as usual obligations indicating ownership, as opposed to a

---

[1] Under Illinois law, the same test is applied. *See In re Powers*, 983 F.2d 88, 90-91 (7th Cir. 1993); *Borg-Warner Leasing, Inc. v. Bauer*, 544 N.E.2d 1322, 1324 (Ill. App. Ct. 1989).

landlord-tenant relationship, the use of triple net leases are not unusual terms in ground leases. *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 751 (2d Cir. 1991). As such, this factor is not determinative.

United concedes that it would never own the leased property or facilities, thus showing United lacks the indicia of ownership generally associated with a party in a financing agreement. However, the Development Agency does not possess an economically significant interest in the property, even during the term of the agreements. If United defaults on the Facilities Sublease, the Development Agency retains no right to the property and may not re-let the property.

Furthermore, the nominal purchase price paid by the Development Agency was not related to the fair market value of the land. Instead, the Development Agency's real purchase was tax-exempt bonds pursuant to the Indenture.

More significantly, Appellant has not demonstrated that United's payments under the Facilities Sublease are tied to the fair market value of the property, as United is only paying the amounts required under the Indenture. United must make the lease payments even if part of the property is condemned. At the same time United is making these lease payments, United must also make payments to the Port Authority for rent on the facilities.

Finally, the Development Agency specifically acquired an interest in the property for United's use, as United must pay the Port Authority regardless of whether United is occupying the property.

Appellant argues that re-characterizing the agreement as a financing agreement would create a transaction in violation of New York law. Appellant contends that the Development Agency is not authorized to make loans and cites a comptroller's opinion letter from 1982.

Opinion of the State Comptroller No. 82-360, 1982 N.Y. LEXIS 728 (Dec. 30, 1982). However, typical financing by a development agency is often made through agreements similar to the ones used in this case, and that practice has been found to be permissible. *See Hotel Syracuse*, 155 B.R. at 840-42.

## CONCLUSION

Based on the foregoing, the March 30, 2004 judgment of the bankruptcy court order is affirmed.

Dated: February 16, 2005

JOHN W. DARRAH
United States District Judge